## Keasbey Trusts

*Angus M. Russell,* of Morgan, Lewis & Bockius, for Accountants.

*Robert Montgomery Scott,* of Montgomery, McCracken, Walker & Rhoads, for The Philadelphia Foundation.

*Robert J. Dixon,* of the Commonwealth of Pennsylvania, as Parens Patriae of Charities.

C. KLEIN, *J.,* April 5, 1977 — Seven separate accounts were listed for audit in May 1976 under the general descriptive title of "The Henry Griffith Keasbey and Anna Griffith Keasbey Memorial Foundation," although only two trusts were involved. One is a testamentary trust which included the residuary estate of Marguerite A. Keasbey, who died June 29, 1960, together with the property over which she had a power of appointment under the deed of trust dated January 16, 1929, of her father, Henry G. Keasbey; the other is a trust under the indenture of Marguerite A. Keasbey dated December 10, 1953, wherein the Fidelity-Philadelphia Trust Company (now The Fidelity Bank) and William Clarke Mason were named as trustees. Both are charitable trusts which were to be known by the same name, viz., "The Henry Griffith Keasbey and Anna Griffith Keasbey Memorial Foundation," and both had similar purposes. The trustees named in the will were The Fidelity Bank and two individual cotrustees.

During the time the trustees were developing a viable program that would fulfill the intentions of Marguerite A. Keasbey, a substantial amount of income accumulated in the two trusts. In 1968, the trustees of both trusts established, for accounting and investment convenience, two separate income accumulation accounts in the inter vivos trust and three separate income accumulation ac-

counts in the testamentary trust. The trustees have now decided that it will simplify future court accountings if only two accounts are hereafter maintained, one for each of the trusts. This is one of the reasons for filing these seven accounts. In the inter vivos trust, the accountants also seek to discharge the estate of William Clarke Mason, co-trustee, who died November 19, 1957.

Adjudications in the four accounts relating to the testamentary trust were released January 3, 1977. The adjudications in the three accounts relating to the inter vivos trust were delayed for two reasons. As we shall demonstrate later, the language of the indenture is not clear as to when the settlor intended the trust to terminate and the auditing judge wanted additional evidence and/or argument presented on this issue.

Furthermore, although The Philadelphia Foundation was named as successor trustee under certain circumstances described in paragraph E of the indenture and, therefore, was, in our opinion, a party in interest, notice of the audit was not given to the foundation.

At a continued audit hearing on January 24, 1977, the accountants were represented by Mr. Russell, The Philadelphia Foundation by Robert Montgomery Scott, and the Commonwealth of Pennsylvania as parens patriae for charities by Robert J. Dixon.

Settlor's indenture dated December 10, 1953, after describing the assets which were to make up the corpus of the trust, provided in paragraph A for a gift to the Church Farm School of Glen Loch, Pa. In paragraph B, she directed that of the balance of principal and income one-fourth be used to provide scholarships for American boys in Oxford and

Cambridge Universities in England and in Edinburgh University in Scotland; one-half be used for scholarships for English, Scottish and Welsh boys in the same universities; and the remaining one-fourth be used to create maintenance fellowships for the benefit of the British scholarship students. Settlor then directed that all scholarships be designated as awards from "The Henry Griffith Keasbey and Anna Griffith Keasbey Memorial Foundation" created in memory of settlor's father and mother.

It is the language of paragraph B(8) and of paragraph E of the indenture which gives rise to the ambiguity as to what settlor intended to happen upon the occasion of her death. We, therefore, quote these paragraphs in full:

"B (8) I authorize and empower my Trustees, by direct investigation on the part of my individual Trustee, Wm. Clarke Mason, or an officer or employee of the Corporate Trustee selected by him, to personally investigate and plan for the best method of awarding the scholarships and fellowships herein provided for and the selection of those individuals to whom the scholarships shall be awarded. One of the purposes of this Trust is the study, planning and development of the most practical and effective way for the carrying out of 'The Henry Griffith Keasbey and Anna Griffith Keasbey Memorial Foundation' to be established by the provisions of my Last Will and Testament, in order that I may determine in my lifetime whether the provisions which I have made for it are adequate and appropriate to accomplish the purposes which I have provided for therein.

" . . .

"E. At the time of my death I authorize my Trus-

tees hereunder either to expend the balance of principal and unexpended income remaining in their hands at that time for the purposes above set forth or to transfer and pay over such balance as may be remaining in their hands after the settlement of all outstanding obligations and undertakings of my Trustees to which they may then be committed to the Philadelphia Foundation, which is to be the administrator of the Trust created by my Last Will and Testament, as an addition to the said Trust Fund designated in my Will as 'The Henry Griffith Keasbey and Anna Griffith Keasbey Memorial Foundation', and I hereby authorize and empower my Trustees to accept the receipt of the Philadelphia Foundation in full discharge and acquittance of their obligations and duties to account further under this Trust, and upon such receipt from the Philadelphia Foundation I hereby direct and declare that my Trustees shall be released from any and all obligations imposed hereunder upon them as Trustees, and I authorize and direct them to file no further accounting in any Court or other public agency.

"I hereby declare that I have been fully advised as to the legal effect of this Trust Indenture and informed as to the character and amount of property hereby transferred and conveyed and further that I have given consideration to the question whether this Indenture shall be revocable or irrevocable and I hereby declare that it shall be irrevocable, that it shall stand without power in me, the said Donor, at any time to revoke, change or annul any of the provisions herein contained."

The scheme contemplated by settlor seems clear enough. It was to create a foundation during her lifetime which would serve as a temporary pilot

program for the permanent foundation she planned to set up by her will, which was to be administered by The Philadelphia Foundation. She relied upon William Clarke Mason, cotrustee of the inter vivos trust, to do the planning and experimenting during her lifetime, and she made no provision for a substitute or a successor cotrustee in the event of his incapacity or death. She specifically provided in paragraph B (9) that:

"(9) In the carrying out of the plans and purposes of this Trust, in the event that any difference of opinion shall develop between my two Trustees, I direct that the decision of my Individual Trustee, Wm. Clarke Mason, shall be final and controlling . . . ."

These are indications that she did not anticipate the inter vivos trust to continue in perpetuity as a charitable foundation, otherwise one would expect she would have provided for successor individual cotrustees, as she did in the testamentary trust.

How then shall we construe the language in paragraph E where settlor authorizes her trustees, at the time of her death, "either to expend the balance of principal and unexpended income remaining in their hands *at that time* . . . *or* to transfer and pay over *such balance* . . . after the settlement of all outstanding obligations and undertakings . . . to which they may *then* be committed to the Philadelphia Foundation, which is to be the administrator of the Trust created by my Last Will and Testament . . ." (Emphasis supplied.)

Although no time limit is expressed within which the trustees are to carry out one or the other of these alternatives, the intention of the settlor appears to be that when she died the affairs of the inter vivos trust were to be wound up in one of two

ways, or by a combination of the two: Either the principal and income then available for scholarships and fellowships were to be "expended," or the unexpended funds were to be turned over to and made part of the testamentary trust.

The ambiguity arises in part because The Philadelphia Foundation was not named as trustee of the testamentary trust in the will of Marguerite A. Keasbey dated February 13, 1958, and codicil dated March 24, 1960, which were probated following her death on June 29, 1960. There is nothing in the record before us to indicate whether there may have been an earlier will in which The Philadelphia Foundation had been named as trustee.

At the hearing on January 24, 1977, Mr. Scott stated for the record he had advised The Philadelphia Foundation that, in his opinion, it was settlor's intention that the inter vivos trust and the testamentary trust should be administered together. In a letter dated February 25, 1977, from Mr. Scott to the auditing judge he made essentially the same point:

"I advised The Philadelphia Foundation that it seemed that at the time of the inter vivos trust Miss Keasbey intended that The Philadelphia Foundation would administer the trust to be established under her will. Apparently, however, by the time she wrote her will she had changed her mind and had designated others as trustees of the trust under will. Given the language in Miss Keasbey's will I could not see that The Philadelphia Foundation had any claim to the trust under will even though some years before she had intended to name The Foundation as trustee. Following this

reasoning: if it was her intent that the two trusts should be merged, they would be administered in the trust under will as she had finally written it."

At the same hearing on January 24, 1977, Mr. Russell presented several reasons why his client, The Fidelity Bank, continued the inter vivos trust as a separate entity from the time settlor died in 1960 until now. He pointed out that although in the management of the inter vivos trust the trustees expended quite a bit of principal, the value of the principal continued to grow because of appreciation in the securities. When settlor died in 1960, The Fidelity Bank as surviving trustee felt that an immediate expenditure of all the principal would be unwarranted and unmanageable. Furthermore, The Philadelphia Foundation was not named trustee of settlor's testamentary trust. In addition, he noted, the surviving trustee felt the purposes of the two trusts are sufficiently different so that combining them would not be practical. And finally, he said, the first sentence of paragraph E authorizes the trustee to elect to continue to expend principal and income for the purposes set forth in the indenture.

We find no merit in any of these contentions. When settlor died, The Fidelity Bank was the sole surviving trustee of the inter vivos trust, and was also cotrustee with two individuals of the testamentary trust. In our view, the language of the indenture, for the reasons we have indicated, should have raised sufficient doubt as to the intentions of the settlor as to require the filing of an account upon her death and an adjudication of the questions raised thereby. When the present account was finally filed in 1976, the question of

settlor's intentions was not even mentioned by the accountant and was, in fact, made an issue by the auditing judge sua sponte.

The positions taken by The Fidelity Bank make sense only if settlor intended to give the trustee of the inter vivos trust the option, upon her death, of either terminating the trust by adding any remaining balance of principal and income to the testamentary trust, or continuing the trust as a separate entity side by side with the testamentary trust. We do not read the indenture as granting such an option. On the contrary, the language used by settlor and all of the surrounding circumstances dictate only one conclusion, that the inter vivos trust was to terminate upon settlor's death, either by the disbursement of all funds then remaining unexpended, or by the transfer of such funds to the testamentary trust. Under this construction it becomes irrelevant that the trustee considered the immediate expenditure of the remaining principal and income to be unwarranted and unmanageable. Settlor made specific provision for this contingency by directing such funds be added to the testamentary trust.

It is also irrelevant that The Philadelphia Foundation was not named trustee of settlor's testamentary trust. Her failure to do so may require the fund be paid to the trustees of the testamentary trust, but we do not see how such failure is justification for the continued existence of the inter vivos trust. Indeed, we applaud the decision of The Philadelphia Foundation not to claim the fund before us for adjudication because it simplifies the task of complying with settlor's clearly expressed intention that the unexpended balances in the

inter vivos trust be added to the testamentary trust, thereby, of necessity, terminating the former.

The next contention advanced by Mr. Russell is that the purposes of the two trusts are sufficiently different to make a combination of them impractical. This misses the very point that settlor sought to make by the directions in paragraph E. We think it is clear that she intended there should be only one foundation after her death, a foundation whose purposes had been developed and refined during her lifetime through the operation of the inter vivos trust. Paragraph B(8) of the indenture, which we have quoted above, reflects settlor's intention that the purposes of the testamentary trust were the ones she would be primarily interested in accomplishing and that the inter vivos trust was to be used only as a means of attaining that goal. In this connection, it is important to note again that settlor gave her individual cotrustee, William Clarke Mason, the controlling voice in carrying out the plans and purposes of the inter vivos trust. As we have indicated, she made no provision for a successor individual cotrustee which one would expect her to do if she intended the inter vivos trust to continue beyond her lifetime. In sharp contrast is the provision in paragraph seventh of her will where she directs that:

"It is my intention that at all times . . . my fiduciaries shall be three in number, one a corporate fiduciary and two individual fiduciaries, and the power to nominate and change the nomination of a successor individual fiduciary shall inure to and shall be exercised by any individual fiduciaries who are successors to those originally named by me in the testamentary documents in effect at the time of my death. . . ."

Can there be a better indication that Marguerite A. Keasbey intended the inter vivos trust to end with her death?

We should also point out that the purposes of the two trusts bear more elements of similarity than dissimilarity. Both the indenture and the will provided that one-fourth of each trust fund be devoted to scholarships for American boys in English and Scottish universities and one-half for English, Scottish and Welsh boys in the same universities. It is only in the disposition of the remaining one-fourth of each fund that we find a significant difference; the indenture provides that portion be used to create maintenance fellowships for the benefit of the British scholarship students, whereas the will directs these funds be used for scholarships to English, Scottish and Welsh boys in public schools in Great Britain. We think it is fair to say that the application of the funds remaining in the inter vivos trust to the purposes of the testamentary trust will do no violence to settlor's charitable intentions.

For all of the above reasons, we conclude that this trust should have been terminated in 1960 when settlor died. Accordingly, we shall now take the action to effect such termination by awarding the funds remaining in the main account and in the income accumulation accounts to the trustees of the residuary testamentary trust. In so doing, we will consider the references to The Philadelphia Foundation in paragraph E of the indenture as inoperative, because they are in obvious conflict with the facts in the case. Settlor did not name The Philadelphia Foundation to be the administrator of the trust fund designated in her will as The Henry Griffith Keasbey and Anna Griffith Keasbey

Memorial Foundation. The testamentary trust she is referring to is identifiable and her intention to add the funds remaining in the inter vivos trust to the testamentary trust is, in our view, clear.

Under these circumstances, there is ample authority for the proposition that a deviation from the terms of the trust is justified where compliance would defeat or impair its purposes: Scott on Trusts, 3d ed., §381; Restatement 2d Trusts, §381; Hunter's Orphans' Court Commonplace Book, Trusts, §18, and cases cited therein. This is not a case for the application of the doctrine of cy pres, but merely the exercise of the ordinary equity jurisdiction of this court over the administration of trusts. See Cy Pres and Deviations: Current Trends in Application, 8 ABA Real Property, Probate and Trust Journal 391 (1973).

| | |
|---|---|
| The account and the supplement thereto show a balance of principal before distribution of | $513,815.93 |
| less counsel fee to Morgan, Lewis & Bockius requested by the accountant, to which there was no objection by any party in interest | 10,000.00 |
| leaving a balance of | $503,815.93 |
| and a balance of income before distribution of | 180,760.95 |
| making a total of | $684,576.88 |

which, after the settlement of all outstanding obligations and undertakings to which the accountant is now committed, and together with any further income to time of actual distribution, is awarded to The Fidelity Bank, Philip J. Greven, Jr. and Angus M. Russell, trustees of the residuary trust, including appointed property, in the estate of Marguerite A. Keasbey, deceased, No. 3235 of 1964, to be

added to the said residuary trust for the uses and purposes declared in decedent's will. . . .

And now, April 5, 1977, the account is confirmed nisi.